**In re Randy Michael LANE and Leeotia Magdaline Lane, Debtors.**

**ASSOCIATES FINANCIAL SERVICES COMPANY OF OHIO, INC., Plaintiff,**

v.

**Randy Michael LANE and Leeotia Magdaline Lane, Defendants.**

**Bankruptcy No. 580–1265.**
**Adv. No. 580–0321.**

United States Bankruptcy Court,
N. D. Ohio.

April 22, 1981.

William D. Lentz, Ravenna, Ohio, for the debtors.

Victor Vigluicci, Ravenna, Ohio, for Associates Financial Services.

## FINDING AS TO DISCHARGEABILITY OF A DEBT

H. F. WHITE, Bankruptcy Judge.

Associates Financial Services Company of Ohio, Inc., hereinafter referred to as "Creditor" filed a complaint against Randy Michael Lane and Leeotia Magdaline Lane, husband and wife, hereinafter referred to as "Debtors", for determination of dischargeability of a debt. Creditor alleges that a loan was obtained by the debtors by the furnishing of a false financial statement, and that the debt is non-dischargeable as provided for under 11 U.S.C. 523(a)(2)(B) of the Bankruptcy Code. The debtors denied said allegations and the matter was duly set for trial.

The Court considered the evidence and testimony, and having an opportunity to observe the witnesses, does hereby make the following Findings of Fact.

### FINDINGS OF FACT

1) The debtors are husband and wife, ages 24 with a tenth grade education and 23 with a ninth grade education respectively.

2) Debtor, Randy Michael Lane, served four (4) years in the Marine Corps.

3) There is one child of said marriage.

4) The debtors did formerly have an account with creditor, which was paid as agreed, and did receive a letter approximately thirty (30) days prior to making an application for the loan at issue herein that their credit was good and the company was willing to make them a loan.

5) On or about March 10, 1980, debtors did communicate by phone with the creditor and furnished the information set forth in plaintiff's exhibit A.

6) That on or about March 13, 1980, the debtors appeared at the office of said creditor and signed plaintiff's exhibit B and wrote in the word "no" in response to the inquiry "Do you owe any other debts?" on the statement of financial condition. The

debtor's wife, signed the statement under the direction of her husband.

7) The debtor, Randy Michael Lane, admits that he knew that he owed additional debts totaling approximately Five Thousand Seven Hundred Thirty Six Dollars ($5,736.00) as shown in plaintiff's exhibit D and that he did knowingly fail to inform said creditor on March 10, 1980 and to list said creditors on plaintiff's exhibit B.

8) The debtor, Randy Michael Lane, at the time of obtaining the loan, had a net weekly income of approximately Three Hundred Twenty Dollars ($320.00) and his wife had a job working in a Lawson's store which she had for one week and which paid her approximately Three Dollars and Twenty Cents ($3.20) per hour.

9) The purpose of the loan was to obtain money to buy furniture and drapes for their new home, the purchase of which was financed by Cardinal Savings & Loan Company.

10) The debtors were obligated to the Second National Bank of Ravenna on a 1976 Nova with a balance due of approximately Nine Hundred Forty Five Dollars ($945.00).

11) The creditor indicated that it would approve the Eight Hundred Dollar ($800.00) loan provided the debtors furnish evidence that the car loan through Second National Bank of Ravenna had been paid off.

12) The debtors did obtain their income tax refund for the year 1979 with which they paid off their mortgage on the car, and then the creditor extended the loan. The principal balance of the loan was Eight Hundred One Dollars and Twenty Cents ($801.20) although the amount financed amounted to Eight Hundred Eighty Nine Dollars and Eighty Five Cents ($889.85) as credit life and accident insurance were added on to the transaction. Finance charges in the amount of Four Hundred Six Dollars and Eighty Eight Cents ($406.88) were charged on the loan.

13) The Court finds that the net income of the debtors had been reduced by fifty percent (50%) because of economic circumstances beyond their control. Had this not occurred, they would have been able to make the payments to the creditor as agreed.

14) The Court finds that had the debtors, instead of paying off their car, used the income tax refund check to make the purchases which they made from the loan obtained from the creditor, it would have been unnecessary to obtain the loan from the creditor and it would have obviously saved them money as they would not have been required to obtain credit accident and health insurance and pay the financing charge of 26.3% per annum on said loan nor were there any savings under the Rule of 78 in paying off the Second National Bank installment loan.

## ISSUE

Has the creditor sustained its burden of proof under 11 U.S.C. 523(a)(2)(B)?

## LAW

To except a debt from discharge under Section 523(a)(2)(B) of the Bankruptcy Code, the creditor must show that the debtor, to obtain money, property, services, or an extension, renewal, or refinance of credit from the creditor, used a written statement that was materially false respecting the debtor's financial condition on which the creditor reasonably relied and which the debtor caused to be made or published with the intent to deceive.

The evidence is clear in this particular case that the information set forth in plaintiff's exhibit A was furnished by the debtor and he knew it was false. However, this information was furnished by telephone and not in the handwriting of the debtors. Therefore, the Court by law can only consider plaintiff's exhibit B which was executed by debtors on March 13, 1981 at the time the loan was consummated. 11 U.S.C. 523(a)(2)(B).

By the testimony of the manager of the company, credit is extended based upon the character, the credit history, the capability of the borrower to repay the loan and the

debt ratio. The credit evaluation is set forth in plaintiff's exhibit A—debtors were given a credit evaluation score of two hundred seventeen (217) points: 46 points for time at home address, 35 points for own/rent, 43 points time with employer, 48 points financial institution reference, 31 points for previous credit reference with the creditor and 14 points for the worst credit reference.

The purpose of the loan was set forth in plaintiff's exhibit A to buy a stove from a friend and drapes for the house for the sum of Eight Hundred Dollars ($800.00). It is significant to this Court that at the time of making the loan the debtors had monthly installment obligations of Five Hundred Forty Two Dollars ($542.00) and were about to become obligated on an indebtedness to Cardinal Savings & Loan in the amount of Forty Five Thousand Dollars ($45,000.00) which was incurred on April 4, 1980, less than three (3) weeks after the loan in question was made. As plaintiff's exhibit A indicated, debtors were buying a home.

Therefore, it is significant to this Court that creditor's manager who, though not interviewing the debtor, did review plaintiff's exhibits A & B and who had been a branch manager since August, 1979 for the creditor and had three (3) years prior experience working for a bank, would have known that the obligation the debtors were about to assume on the purchase of a new house would have substantially altered their debt ratio although it was not reflected in earlier financial statements.

The Court also notes that this loan was unnecessary and economically disadvantageous to the debtors and very advantageous to the creditor. The negotiation of the loan was not in the best interest of the debtors as they had sufficient funds from their tax refund to make the purchases they made with the loan. Instead of requiring the debtors to pay off their car loan to Second National Bank of Ravenna, the creditor could have advised the debtors to use their income tax refund to purchase the drapes for the house and the stove, and thus avoid the insurance charges of Eighty Eight Dollars and Sixty Five Cents ($88.65) and addi-tional finance charges of Four Hundred Six Dollars and Eighty Eight Cents ($406.88). It is obvious to this Court that due to the debtors' limited financial education they did not realize that they were incurring an additional debt of Four Hundred Ninety Five Dollars and Fifty Three Cents ($495.53) to obtain a loan of Eight Hundred One Dollars and Twenty Cents ($801.20), and that since they already had obligated themselves on the loan for the purchase of the car, it would have been economic logic to use the income tax refund to make the purchases they desired. The only party who would be disadvantaged by such a transaction would have been the creditor finance company as failure to make the loan would not have been in the creditors' best interest.

This Court finds that the debtor did give false financial information to the creditor by failing to list all his debts, but that the creditor did not reasonably rely on the false statement. Under Rule 407 of the Bankruptcy Rules of Procedure, the creditor, as the party asserting the claim of nondischargeability, has the burden of establishing all the elements of Section 523(a)(2)(B) by clear and convincing evidence. Subsection (iii) of Section 523(a)(2)(B) requires that the creditor not only prove that it relied on the debtor's false written statement, but that the creditor's reliance was reasonable.

It appears to this Court that the creditor relied on past dealings with the debtors in deciding whether to grant the debtors the loan at issue herein. Creditor's prior loan with the debtors was paid in full by the debtors as agreed. Creditor, by letter, expressed its willingness to make the loan at issue thirty (30) days before the debtors made out their application for said loan. Therefore, it appears that the creditor did not rely on the debtors' financial statement, but instead relied on the good past dealing with the debtors, his current income and their eagerness to make this loan based upon interest they would earn under the Small Loan Act of Ohio.

The purpose of the exception to discharge set forth in 11 U.S.C. 523(a)(2)(B) is to protect creditors who are actually misled by fraudulent statements of debtors. Creditor,

herein, was not misled into extending debtors credit by debtors' failure to list all their debts. This Court notes that the statement of financial condition form used by the creditor has only half a line to list liabilities after the inquiry "Do you owe any other debts?".

The question is, whether faced with the knowledge the creditor had, was reliance on the statement given reasonable. See *Matter of Redford*, 7 B.R. 322 (Bkrtcy.M.D.Ga. 1980). Creditor, herein, had information other than the financial statement available, such as debtors' credit evaluation, debtors' credit history with creditor, and debtors' monthly income versus monthly expenses, on which to base its decision of whether to grant credit. As indicated in Finding of Fact No. 13, the debtor's current net income per week was reduced by approximately fifty percent (50%) because of cutbacks in his work by the company and has continued up to the date of the trial.

It is the conclusion of this Court that the creditor has not sustained its burden of establishing all the elements of 11 U.S.C. 523(a)(2)(B) by clear and convincing evidence and therefore the creditor's debt is dischargeable.